REED v. WHIPPLE.

1. JUDGMENT — RES ADJUDICATA — WILLS — UNDUE INFLUENCE — GIFT CAUSA MORTIS.

An adjudication that a will made on the 2d of May was brought about by the undue influence of the principal legatee was not res judicata as to the question whether certain property of the testator, delivered by him to such legatee on May 8th, was a valid gift causa mortis.

2. TRIAL—APPEAL FROM PROBATE COURT—FINDINGS OF FACT— SUFFICIENCY.

Where, on appeal from probate court, the circuit judge finds that another party has also filed a claim and notice of appeal, but has not perfected it, and sets up in his findings the substance of the claim so far as is material to the contentions of the parties, it is not error to refuse an amended finding making the claim and notice of appeal an exhibit:

3. SAME—CONCLUSIVENESS.

It is not error to refuse a finding of fact in effect deciding the case in favor of the party requesting it where the opposite finding is supported by the evidence.

4. EXECUTORS AND ADMINISTRATORS—GIFTS CAUSA MORTIS—CERTIFICATES OF DEPOSIT—INDORSEMENT—SPECIAL ADMINISTRATOR.

Where, shortly before his death, the owner of certificates of deposit and a bank book indorsed them for the purpose of making a gift causa mortis, and, on the special administrator attempting to collect them, the bank having been notified by the heirs not to pay them, refused, as a precautionary measure, to pay them unless the special administrator would indorse them as such, his act in so indorsing them was not conclusive that they were the property of the estate.

5. SAVING QUESTIONS FOR REVIEW—PRODUCTION OF BOOKS.

A complaint that the court erred in ruling that an administrator need not produce his books on settlement of his account is not sustained by the record, where it appears that, on cross-examination, he said he would produce them if necessary, and the court suggested that the law provided how to get them into court, and stated that he doubted his authority to order them in in the then state of the case.

6. WITNESSES—MATTERS WITHIN KNOWLEDGE OF DECEASED.

One who claims that certain certificates of deposit in the name of the decedent were hers by reason of a gift causa mortis is not prohibited from so testifying by the statute (§ 10212, 3 Comp. Laws) on an issue between the heirs and the administrator as to whether they should have been included in his account as assets of the estate.

7. HARMLESS ERROR—EVIDENCE—CASE TRIED TO COURT.

Error in striking and refusal to strike immaterial testimony does not prejudice in a case tried to the court.

8. APPEAL—PROBATE COURT—ADMINISTRATOR'S ACCOUNT—QUESTIONS CONSIDERED.

Appeal from the order of the probate court allowing the final account of an administrator, brings the whole account before the circuit court, and, no appearance being entered in probate court, appellant may raise questions not raised and passed upon there though his attorney was present.

Error to St. Clair; Law, J. Submitted January 17, 1905. (Docket No. 56.) Decided May 12, 1905.

Benjamin R. Whipple, administrator of the estate of Frank Whipple, deceased, presented the final account of his intestate as special administrator of the estate of Peter W. Reed, deceased. The account was allowed in the probate court, and Robert H. Reed and another, heirs, appealed to the circuit court. There was judgment at the circuit affirming the order of the probate court and dismissing the appeal, and appellants bring error. Judgment affirmed, and order dismissing appeal reversed.

*H. W. Stevens* and *George G. Moore* (*Stevens, Graham & Stevens* and *W. T. Mitchell*, of counsel), for appellants.

*Phillips & Jenks*, for appellee.

McALVAY, J. Frank Whipple, deceased, was during his lifetime special administrator of the estate of Peter W. Reed, deceased. Benjamin R. Whipple, as administrator

of the estate of his father, Frank Whipple, special administrator as aforesaid, deceased, presented the final account of such special administrator of the estate of Peter W. Reed, deceased, to the probate court of St. Clair county for hearing and allowance. The usual statutory notice was given, and a hearing upon such final account was had, no one appearing in opposition thereto. This final account was allowed October 28, 1901.

From this order R. H. Reed and Annie Smith, two of the heirs of Peter W. Reed, appealed to the circuit court for St. Clair county, for the following reasons:

1. That said account does not account for all the property that came into the hands of said Frank Whipple as special administrator of the estate of said Peter W. Reed, deceased.

2. That there was in the hands of the said Frank Whipple the sum of $3,400 belonging to the estate of Peter W. Reed, deceased, which has not been accounted for.

3. That all the rents collected by said Frank Whipple as such special administrator have not been accounted for, and other property.

The appeal was heard before the circuit court without a jury, and, upon request of both parties, the circuit judge found the facts and his conclusions of law as follows:

"FINDINGS OF FACT.

"1. Peter W. Reed deceased at his residence in the city of Port Huron, on the 9th day of May, 1898.

"2. On Sunday, the 8th day of May, 1898, Peter W. Reed was seriously ill. On that day he directed one Hannah Waters to procure for him from his safe in the room two certificates of deposit, both issued by the Port Huron Savings Bank to him. One of these certificates was numbered 7,053, dated June 18, 1897, for $1,000; the other was numbered 7,123, dated March 2, 1892, for $1,200. He also at the same time directed the said Hannah Waters to procure for him from said safe a bank book representing a savings deposit in the Commercial Bank of the city of Port Huron of about $1,200. The said Hannah Waters procured these certificates and savings bank book from the safe, and handed them to him as he had directed.

" 3. Immediately after Peter W. Reed received these certificates of deposit and the savings bank book, he indorsed the said certificates in blank, and also wrote the following on the back of the savings bank book:

" ' JOHN PORTER: Please sign the amount of this book to Miss Hannah Waters.

" '·P. W. REED.'

" John W. Porter at this time was the cashier of the Commercial Bank.

" 4. After indorsing the certificates of deposit, and writing the words above quoted on the savings bank book, Peter W. Reed delivered the certificates and bank book to Hannah Waters, and said:

" 'This is all the money I have. I don't think I can get better. If I do, I want you to give them back; if I do not, they are yours. Take them down to the bank in the morning and have them renewed to you. I want you to take them and take care of yourself and the baby, and if I get better I want you to transfer them back to me.'

" 5. In the afternoon of the same day Frank Whipple called in to see Peter W. Reed, for whom he had been acting as counsel, and Mr. Reed informed him of what he had done in the morning, and stated to Mr. Whipple, in the presence of Hannah Waters, that he thought it would be best for him to take the certificates of deposit and the bank book down in the morning and have them renewed to Hannah Waters and then brought back. They were then handed to Mr. Whipple by Hannah Waters. The certificates of deposit remained in the possession of Mr. Whipple from this time until July 20, 1899, and the savings bank book until June 21, 1901. On May 2, 1892, Peter W. Reed had made a will, in which the greater part of his property had been left to Hannah Waters and to her infant child, and in which Frank Whipple was named as executor. The heirs of Peter W. Reed contested this will. Pending the contest over the will, Frank Whipple was appointed special administrator of the estate of Peter W. Reed, deceased. On September 13, 1898, the will was allowed and admitted to probate by the probate court of St. Clair county. The heirs of Peter W. Reed appealed from the allowance of the will, and the will was set aside by a jury in the circuit court. This cause was taken to the Supreme Court on writ of error, where the verdict of the jury was sustained on December 21, 1901. [*Waters* v. *Reed*, 129 Mich. 131.] Frank Whip-

ple deceased on August 1, 1901, and Benjamin R. Whipple, his administrator, filed the present account, which was allowed by the probate court on September 28, 1901.

"6. On the 20th day of July, 1899, Frank Whipple presented the certificates of deposit heretofore described at the Port Huron Savings Bank, and asked for payment. At this time the only indorsement on them was the name of P. W. Reed, the payee. The bank clerk or official to whom they were presented referred the matter to Mr. Harrington, the cashier of the bank, who examined them. Mr. Whipple at that time informed Mr. Harrington that they belonged to him. Mr. Harrington then said to him: 'You are administrator, anyway, or special administrator.' To this Mr. Whipple said, 'Yes.' Mr. Harrington then said, 'Then you better indorse them that way.' Mr. Whipple then wrote his name on the back of each certificate, and wrote under each name, 'Spl. Admr.,' meaning special administrator. The sums named on the face of the certificates, with interest on them, amounting to $2,288, were then paid to Mr. Whipple. It is a fair inference from Mr. Harrington's testimony that he required this form of indorsement to be made by Mr. Whipple solely for the protection of the bank, and I find that such was Mr. Harrington's purpose in requiring indorsements in this form.

"7. On June 21, 1901, Mr. Whipple presented the savings bank book above described to the Commercial Bank, with the writing placed thereon by Peter W. Reed, and asked for $1,000 of the money represented by the bank book. Prior to this, and on March 24, 1900, the heirs of Peter W. Reed had caused a notice to be served on the Commercial Bank, notifying said bank not to pay out any money in its possession 'belonging either directly or indirectly to the estate of Peter W. Reed, to any person other than to some one duly authorized by the probate court of this county to receipt for the same. We call your attention particularly to the savings deposit of upwards of $1,200 claimed by Hannah Waters under an order of Peter W. Reed.' By reason of this fact, when the bank book was presented, the bank officials declined to make payment to Mr. Whipple, unless he would produce a certificate of his authority as administrator of said estate, and receipt for the money in that capacity. This Mr. Whipple did, and $1,000 was paid to him. This method of making payment to Mr. Whipple was insisted on by the

bank officials as a protection to the bank on account of the service on them of the notice above described.

"8. At the time of the presentation of the will of Peter W. Reed for probate, Mr. Whipple appeared as one of the attorneys for the proponent of the will, and, from that time up to the date of his decease, performed services in his effort to sustain the will, for which services no account was ever presented or claim made against the estate of Peter W. Reed. After the death of Mr. Whipple a special administrator de bonis non was appointed for the Reed estate.

"9. After the death of Frank Whipple, on August 1, 1901, Benjamin R. Whipple, his son, was appointed as administrator of his estate, and as such administrator presented the final account of Frank Whipple, as administrator of the estate of Peter W. Reed, deceased. In this account he did not include the moneys represented by the certificates of deposit or the savings bank book, nor was there any charge inserted on account of the services of Frank Whipple in connection with the Peter W. Reed estate, nor for any expenditure in connection with the litigation arising over the contest of the will.

"10. This final account now under consideration was duly published as the law requires, and prior to its allowance was examined in behalf of the heirs, who are the appellants in this case, by Mr. John L. Black, who was one of their attorneys during all the litigation, and who knew of the time when the account was set for hearing. Mr. Black was present in the probate court on the day this account was heard and during the hearing thereof, but interposed no objection to the account. At the time of the hearing there was no appearance on the part of any of the appellants, nor was there any contest made over the account, nor any request to have the account include the amount of the certificates of deposit, or the amount drawn from the savings bank account, although at this time knowledge that Frank Whipple had procured the payment to him of the certificates of deposit and of $1,000 from the savings bank account was in the possession of all parties interested in the Peter W. Reed estate, and had been for some considerable time prior to the hearing on the account.

"11. On November 27, 1901, Hannah Waters, as a devisee under the will of Peter W. Reed, filed in probate court a claim and notice of appeal from the order allowing the final account of Frank Whipple, presented by Benja-

min R. Whipple, as administrator of Frank Whipple. Said claim and notice of appeal recites that the account omits the certificates of deposit and the savings bank account to which reference has heretofore been made. This appeal has not been perfected or taken to this court.

"12. As shown by the account filed by Benjamin R. Whipple, the estate of Peter W. Reed is solvent, and the proceeds of the certificates of deposit and of the savings bank are not required for the purpose of paying the debts of said estate.

"I find that the indorsements of the certificates of deposit by Frank Whipple, as special administrator of the estate of Peter W. Reed, were made for the express purpose of satisfying a condition imposed by the Port Huron Savings Bank.

"14. I find that the giving of the receipt demanded by the Commercial Bank, by Frank Whipple, and the filing with said bank of a certified copy of the order appointing Frank Whipple special administrator, was for the same purpose as the indorsements of the certificates demanded by the Port Huron Savings Bank, and was entirely a matter of precaution on the part of the bank.

"15. I find that the issues sought to be presented to this court on this appeal were not presented to the probate court, nor was any opportunity given that court to pass on them; no objection is urged here to the account as allowed by the probate court, except the failure to include the amount of the certificates of deposit, and the amount as shown by the savings bank book in said account, as a part of the assets of the estate of Peter W. Reed.

## "CONCLUSIONS OF LAW.

"1. The estate of Peter W. Reed had no right, title, or interest in and to the certificates of deposit in the Port Huron Savings Bank before the same were paid to Frank Whipple, and the fact that he indorsed them as special administrator of said estate and received the money thereon did not operate to vest or place the title of said certificates or their proceeds in the estate, nor did it create an estoppel such as would prevent the said Frank Whipple or Hannah Waters from retaining the proceeds thereof. Neither does the claim of appeal from the order of the probate court allowing this account filed in probate court have any such effect.

"2. The estate of Peter W. Reed had no right, title, or

interest in or to the moneys represented by the savings account in the Commercial Bank, and said money was not, after the death of Peter W. Reed, a part of his estate. The acts of Frank Whipple in signing a receipt at the bank as special administrator, and in filing a certified copy with the bank of his appointment as special administrator of the Reed estate, where he received $1,000 of this money, did not operate to vest the title to this savings bank account in said estate, neither did it operate as an estoppel to prevent Frank Whipple or Hannah Waters from claiming the amount thereof. Neither does the claim of appeal filed in the probate court by Hannah Waters have any such effect.

"3. I further find that the issues here sought to be tried are presented for the first time in this court, not having been raised or tried in probate court, and, in consequence, the trial in this court is not upon appeal.

"As a result of the above findings of fact and conclusions of law, this attempted appeal must be dismissed, and the order of the probate court allowing the account affirmed, with costs to appellee. An order may be prepared certifying this determination to the probate court."

Appellants proposed certain amendments to the findings of fact which were not allowed, to which appellants excepted, and exceptions were also taken to the findings of fact and conclusions of law hereinbefore set forth. Upon these exceptions errors are assigned, and also as to certain rulings of the court during the progress of the trial. The errors assigned will not be considered in their order, but will be grouped and considered as they more naturally arise in the consideration and discussion of the case.

Appellants came from probate court to the circuit court, appealing from the order allowing the final account of the special administrator, alleging three specific reasons:

1. That all the property was not accounted for.
2. That the sum of $3,400 in the hands of the special administrator was not accounted for.
3. That all rents collected and other property were not accounted for by him.

Upon the hearing the only testimony offered by appellants was with reference to the $3,400 mentioned in the

second reason given. This was the money represented by the two certificates of deposit and the savings bank book, all claimed by Hannah Waters. The claims of the parties upon this trial, briefly stated, were: That appellants claimed this $3,400 belonged to the estate of Peter W. Reed, deceased, to be accounted for by the special administrator. Appellee claimed that this sum represented by the certificates of deposit and the bank book was the property of Hannah Waters, being a gift causa mortis to her by said Peter W. Reed.

1. Errors are assigned on account of the refusal of the court to allow the amendments to the findings of fact, proposed by the appellants. The record shows that six such amendments were proposed. The first, fifth, and sixth relate to the fact that the will of Peter W. Reed, deceased, had been held void in the circuit court on account of undue influence of Hannah Waters, and the judgment of said court had been affirmed by this court, and ask that the court find the effect of the decision to adjudge that the certificates and bank book were the property of the estate of Peter W. Reed; in other words, that the decision in that case made the question raised here as to this property res adjudicata. The circumstances upon which the claim of ownership in Hannah Waters to this property is based occurred on the 8th day of May, 1898. The will was made May 2, 1898. The determination as to the validity of the will did not adjudicate the question as to the gift causa mortis of this property. The court evidently allowed the testimony admitted as to this will as bearing upon the main question of fact in dispute in the present case. The court did not err in refusing these proposed findings.

The second proposed amendment amends the eleventh finding of fact by adding, "and said claim and notice of appeal are hereto attached, marked 'Exhibit A,' and made a part of this finding. It will be observed that this eleventh finding of fact of the court relates to the fact that Hannah Waters, as devisee under the will of Peter W. Reed, filed a claim and notice of appeal from the order,

which is now before this court, allowing the final account of the special administrator, Frank Whipple; said claim and notice alleges that the account omits the certificates of deposit and bank account in dispute in this case. We do not think that to set forth that appeal verbatim would state the fact more clearly. The court further found that her appeal had not been perfected. What she did on this claim and notice of appeal could be considered as bearing upon the present contention, but it was not error to refuse to set up all the details of that appeal.

The third amendment proposed a finding that the certificates and the money represented by the bank book were the property of the estate of Peter W. Reed. This asked for a finding by the court in favor of appellants. If the court accepted the contention of the appellants, and was satisfied that it was sustained by a preponderance of evidence, he would without doubt have found as requested, but, as his findings show a contrary conclusion, he was not in error, provided such finding is found to be supported by evidence.

The fourth amendment proposed a finding that the action of Frank Whipple in receipting for the funds in dispute as special administrator obligated him to account for such funds to the estate. This contention is undoubtedly true, if such action is undisputable evidence and conclusive as to that matter. We do not think it is. There is testimony in the case tending to show the circumstances under which he received the funds, and why he signed as such special administrator. It is conceded that such signing is weighty evidence that he was dealing with the property as belonging to the estate, but it is not conclusive. No error was committed in refusing to allow the amendment.

2. There are eleven assignments of error upon rulings of the court during the progress of the trial. The record does not seem to support the first of these assignments of error. It relates to the testimony of Harrington, bank cashier, a witness for appellants, and claims that the court overruled the objection to his testimony, on cross-exami-

nation, in substance that he would not have paid the certificates if Whipple had not indorsed them as special administrator. The record shows that this occurred on redirect examination, that the other side objected, and the court overruled the objection, and the witness answered the question. Appellants had no cause for complaint.

It is claimed that the court erred in ruling that the administrator, Benjamin R. Whipple, need not produce the special administrator's books. The record does not show that the court made such a ruling. This witness said he would produce the books if necessary, and the court suggested that the law provided how to get them into court, saying he doubted his authority to order them in at the present state of the case. No subpoena duces tecum or order to produce was asked for. Counsel should have followed the usual practice if these books were considered material. The court did not refuse its assistance.

It is also claimed that the court erred in permitting the witness Hannah Waters to testify as to matters equally within the knowledge of Peter W. Reed or Frank Whipple. As far as this proceeding is concerned, this witness could in no way be considered as an opposite party to the interest of Frank Whipple. The suit or proceeding was an adjudication upon the final account of said Whipple as special administrator of the estate of Peter W. Reed, deceased, and the question is not raised in behalf of Whipple. If it were, and if the statute invoked applied, the representative of Whipple waived the question by introducing this testimony.

The question is raised by the appellants, who are two of the heirs of Peter W. Reed. The claim is made that Hannah Waters is in fact the opposite party, and that this is a proceeding defended by the heirs of a deceased person. The familiar words of this statute are:

" That when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf shall

not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person." 3 Comp. Laws, § 10212.

It cannot be disputed but that the facts testified to by this witness, relative to what occurred at the time the claimed gift causa mortis was made to her by Peter W. Reed, were, if true, equally within his knowledge. The question is squarely raised upon the record, but counsel on both sides in their briefs present the question without argument or citation of authorities. The statute has been many times passed upon by this court, and, to determine the question here raised, has necessitated the examination of the numerous cases.

In *Downey* v. *Andrus*, 43 Mich. 65; *Latourette* v. *McKeon*, 104 Mich. 156, and several other cases, all these decisions are summarized and reviewed. In none of these cases do we find circumstances exactly similar to the case at bar. This court has laid down the proposition that the inhibition of the statute is to be applied to the real party in interest, in determining who is to come within the meaning of the term "opposite party." We think that the further proposition may be stated that such person, in order to be considered within the term "opposite party," must be concluded by the determination of the proceeding or suit under consideration. It cannot be disputed but that the witness Hannah Waters was in a sense an interested witness. Is she on that account the real party in interest? Would she be concluded by the determination in this proceeding? Can it be said that, no matter what might be the result here, she could not take any proper proceedings to enforce her claimed rights to the property in dispute, should such proceedings be deemed necessary? Would this become res adjudicata as to her? We must answer these questions in the negative. She is not a party, real or nominal, to this proceeding. She has been called as a witness on behalf of the representative of the special administrator, and it is sought to establish by her that the property which appellants claim

belongs to the estate of Peter W. Reed, deceased, is her property, and therefore not to be accounted for by the special administrator. This proceeding gives her no day in court, and cannot be res adjudicata as to her rights and interests. It was not error to accept her testimony.

Error is assigned as to the refusal of the court to strike out the testimony of this witness relative to the fact that she had not paid Frank Whipple anything for his services, and in striking out her statement that "Judge Whipple did just as he thought best about the matter. He had it in his hands." Both these statements had no bearing upon the real questions in controversy. This case was tried without a jury. We think there would have been no error in striking out both statements, and leaving the first in the case was not prejudicial.

Judge Whipple's testimony on the contest of the will was sought to be shown on cross-examination of this witness in this proceeding, claiming that he having been called in behalf of proponents of said will, and having testified as to certain matters, she was estopped by his testimony. A copy of his testimony was not produced or offered in evidence. No proper foundation was laid for its introduction. We think the court exercised all the latitude proper, relative to such cross-examination, and very properly kept, as far as possible, the issue in this case separate and distinct from the other cases which have been litigated in this estate.

The only remaining exceptions, not already considered, relate to the finding and determination of the court relative to the appeal from the probate court, and dismissing the same because the issues presented were not raised in the probate court. We think these exceptions are well taken. If the court was right in his holding, no appeal can be taken in any case from probate court to the circuit court where the party appealing does not appear and tender an issue in probate court upon all questions he may desire to raise upon an appeal, and that no appeal can be tried in the circuit court upon questions not raised and

passed upon in probate court.   In cases of accountings by administrators and executors this is not the law.

In *Showers* v. *Morrill*, 41 Mich. 700, an administrator appealed from part of an order disallowing certain items of his final account.   Referring to and quoting the statute, the court said:

: "This clearly does not authorize or permit an appeal to be taken from the disallowance of certain items in an account.   The appeal must be taken from the order which brings up the entire matter and permits a rehearing upon each and every item of the account."

*Jackson* v. *Leech's Estate*, 113 Mich. 391, was an appeal from an order made on the final account of an executor, where he was charged with a large sum in addition to the account presented by him.   In the circuit court he was allowed to amend the account by adding certain items to his credits.   The court held:

" It is said that this amendment is unlawful, it being contended that the circuit court could not pass upon items not considered by the probate court, and counsel cites *Patrick* v. *Howard*, 47 Mich. 40, and other cases in support of this contention.   These were cases of claims of creditors, and are distinguishable from this case, which falls under the well-settled rule that, in cases of accounting by administrators and executors, it is proper for the circuit court to allow amendments and additions to the account presented for settlement, in furtherance of justice.   *Brown* v. *Forsche*, 43 Mich. 501; *Loomis* v. *Armstrong*, 49 Mich. 527, 63 Mich. 366.   We are of the opinion that the amendment was properly allowed."

The presence of an attorney in the case at bar for the appellants in probate court at the time of hearing, where no appearance was entered, and no rights waived, was immaterial, as was also the finding of fact relative to that matter.   This appeal brought the whole account before the circuit court.   The appeal was properly made.   The conclusion of the circuit court that the appeal should be dismissed was erroneous.   The case was properly before the circuit court for trial.   The facts found and the con-

clusions of law were supported by the evidence in the case, and upon said findings of fact and conclusions of law, except as above set forth, the said judgment affirming the order of the probate court is affirmed, with costs.

The case will be remanded to the circuit court, where a proper order will be prepared certifying this determination to the probate court. .

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.