■ DONALD R. HUNT, Appellant, v EDWARD G. HUNT et al., Respondents. (Action No. 1.) EDWARD G. HUNT, Respondent, v DONALD R. HUNT, Appellant. (Action No. 2.) [634 NYS2d 804] —Spain, J. Appeal from a judgment of the Supreme Court (White, J.), entered September 1, 1994 in Fulton County, upon a decision of the court in favor of Edward G. Hunt.

In the early 1950s Edward G. Hunt began working at his father's gasoline service station at the age of 16 years; within a short period of time his father, George Hunt, placed him in charge of the business. In 1953 Edward, with approximately $7,000 he had received from the settlement of a personal injury negligence action, purchased a dump truck and track loader and started a contracting business. In or about 1958 Edward's younger brother, Donald, began working at the service station. In 1965, the year their father died, Edward filed, in his name only and as successor in interest to his father, a certificate of doing business as "Hunt's Garage". In 1969 Hunt Brothers Contractors, Inc. (hereinafter the corporation) was formed and included the garage and the contracting business; no stock certificates were ever issued and the certificate of incorporation does not reflect the identity of the shareholders. Edward was the president of the corporation and Donald the vice-president. During the ensuing years the corporation expanded to include four components, to wit: the garage, the construction business, Hamilton Oil Company and Hamilton Ready Mix. The oil company was purchased by Edward in 1977 from Stuart Oil Service with promissory notes signed by him and moneys he received from the sale of his residence after his divorce. In 1978 Edward used approximately $8,000 from a workers' compensation award to purchase equipment for the corpora-

tion. In December 1990, after a dispute with Edward, Donald left the business.

Donald commenced action No. 1 alleging, *inter alia*, that he was an owner of 50% of the shares of the corporation and seeking an accounting. Edward answered, denying that Donald was an owner of the corporation, and commenced action No. 2 for money damages, alleging, *inter alia*, that Donald improperly withdrew money from certain joint bank accounts. In April 1992 the two actions were joined for trial; after a nonjury trial Supreme Court dismissed action No. 1 and determined, in action No. 2, that Edward was entitled to $6,857.83 in damages since Donald withdrew more than his half of a joint bank account set up by Edward. Donald appeals.

We affirm. Donald's assertion that he was a 50% shareholder in the corporation was not established by a preponderance of the evidence. Since no certificates of stock were issued by the corporation, Supreme Court properly examined other evidence to determine the validity of Donald's claim (*see, Rocha Toussier y Asociados, S.C. v Rivero*, 184 AD2d 397, 398; *Matter of Benincasa v Garrubbo*, 141 AD2d 636, 639). Donald's argument that Supreme Court should have given more attention to the documentary evidence is without merit. A number of documents before the court, including invoices, letters and financing documents, referred to both Edward and Donald as being principals of the business. However, Supreme Court understandably afforded little weight, if any, to this evidence. Donald was both an employee and vice-president of the corporation; therefore, it does not seem unreasonable that third parties dealing with the business might be confused about the true legal relationship between the parties. As to the corporate tax returns, which for seven years reported that Edward and Donald were each 50% shareholders of the corporation, the corporate accountant who prepared those returns testified at the trial that he believed the stock ownership as listed on those returns was in error. Moreover, other corporate tax returns report that Edward is 100% owner of the corporation's stock.

Notably, the record demonstrates that Edward conducted virtually all of the corporation's business and it was not unreasonable to believe Edward's testimony that Donald's name was put on the joint bank accounts merely for his protection in the event something were to happen to Edward, especially since Donald does not assert that he ever contributed any money to these accounts. The record also supports Edward's testimony that Donald never contributed any money to the corporation between 1969 and 1990. There is no documentary evidence to

support Donald's general assertion that he sometimes gave up a paycheck and contributed other funds to the corporation and, while both brother's names were listed on a number of deeds, mortgages and loan guarantees, the record reflects that only Edward and/or the corporation actually paid for those purchases or obligations.

This Court's inquiry is not limited to whether the trial court's findings were supported by credible evidence; rather, if it appears that a finding different from that of Supreme Court is not unreasonable, we must weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn, and grant judgment as warranted (*see, Hoover v Durkee*, 212 AD2d 839, 841; *Brooker v State of New York*, 206 AD2d 712). However, deference must be given to the findings of the trial court which was in a better position to assess the credibility of the witnesses (*see, Newland v State of New York*, 205 AD2d 1015, 1016; *Niles v State of New York*, 201 AD2d 774, 776). While Supreme Court recognized that Donald presented some evidence supporting his position, it reasonably found that Donald did not meet his burden.

It is significant that Donald admitted on a number of occasions that he had no ownership in the corporation. In 1974 he testified at a Family Court proceeding that he was not a shareholder in the business; although he asserted before Supreme Court that his testimony was fabricated to minimize a potential support award, the record reveals a number of other instances where he disclaimed any ownership in the corporation. In 1976 he submitted a financial statement to a bank and in 1985 he submitted a financial affidavit to Family Court, each of which failed to indicate any ownership; his brother Allen Hunt and his ex-wife each testified that on a number of occasions he stated that Edward owned the corporation. Reviewing the evidence and recognizing that Supreme Court's conclusion rested largely on considerations relating to the credibility of the witnesses, it is our view that a reversal or modification is not warranted in this case (*see, Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499).

Donald's failure to address, in his brief, Supreme Court's determination that Edward is entitled to recover damages in action No. 2 constitutes an abandonment of any appeal concerning that ruling (*see, Enck v Enck*, 187 AD2d 897, 898; *Morey v Sings*, 174 AD2d 870).

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.