MICHELLE E. KUN, Appellant, v JACQUELINE I. FULOP et al., Respondents. [896 NYS2d 462]—

In an action for a judgment declaring that the plaintiff is a 50% shareholder of the defendant Bucked Tooth Realty Corp., the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Austin, J.), entered December 12, 2008, as, upon a decision of the same court dated October 7, 2008, made after a nonjury trial, declared that the plaintiff was not a shareholder of the defendant Bucked Tooth Realty Corp., and that the defendant Jacqueline I. Fulop was the sole shareholder.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

The plaintiff, Michelle Kun, is a pediatric dentist, and the defendant Jacqueline I. Fulop is an orthodontist. In 2002 Fulop found an office space in Woodbury, New York, which ultimately became a dental office. Fulop's attorney, Joseph Slater, incorporated Bucked Tooth Realty Corp. (hereinafter Bucked Tooth), in January 2003. Slater also negotiated the lease, which was executed in March 2003. The office space was leased by Bucked Tooth, and the lease was signed by Fulop, as president of Bucked Tooth. Fulop was the sole shareholder of Bucked Tooth, and the sole asset of Bucked Tooth was the leasehold interest in the dental office.

Kun testified at trial that she went to see the office space with Fulop, and told her that she wanted to share the space. She also testified that she told Fulop that she wanted to be a 50% shareholder of Bucked Tooth; however, Fulop testified that she never agreed to that. When the dental office opened in July 2003 the parties began to share the space. At trial, Fulop testified that she always considered Kun to be a subtenant in the office. Kun and Fulop (hereinafter together the parties) shared rent and office expenses equally, both entered into an equipment loan for the purchase of dental equipment, and Kun paid half of Slater's legal fees for negotiating the lease and incorporating Bucked Tooth. This arrangement continued amicably for a time. However the parties' relationship began to deteriorate, and Kun subsequently brought this action for a judgment declaring that she is a 50% shareholder of Bucked Tooth.

"In reviewing a trial court's findings of fact following a nonjury trial, this Court's authority is as broad as that of the trial court and includes the power to render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses" (*O'Brien v Dalessandro*, 43 AD3d 1123, 1123 [2007] [internal quotation marks omitted]). Deference is owed to the trial court's credibility determinations (*see Fowler v Jamaica Bus*, 62 AD3d 943 [2009]; *Praimnath v Torres*, 59 AD3d 419 [2009]).

"The mere fact that the corporation did not issue any stock certificates [to an individual] does not preclude a finding that [the individual] has the rights of a shareholder" (*French v French*, 288 AD2d 256, 256 [2001]; *see Matter of Benincasa v Garrubbo*, 141 AD2d 636, 638 [1988]). "In the absence of a share certificate . . . a court must determine from other available evidence whether a putative shareholder in fact and law enjoys that status" (*Matter of Pappas v Corfian Enters. Ltd.*, 22 Misc 3d 1113[A], 2009 NY Slip Op 50109, *3 [2009]). In that

regard, "[t]he relationship between a corporation and its stockholders is contractual . . . to constitute one a stockholder a subscription or contract whereby the right to hold stock or upon some condition to demand stock and to exercise the rights of a stockholder is required" (*id.* [internal quotation marks omitted]). Pursuant to Business Corporation Law § 504 (a), consideration for the issuance of shares can include money or other property, or "labor or services actually received by or performed for the corporation or for its benefit or in its formation or reorganization."

To support her claim that she is a 50% shareholder of Bucked Tooth, Kun argues that, pursuant to Business Corporation Law § 504, her payment of half the legal fees for setting up Bucked Tooth, and half the rent and office expenses thereafter, constituted good and valuable consideration for 50% of the shares of Bucked Tooth. However, the Supreme Court properly found that there was no evidence adduced at trial demonstrating any understanding or meeting of the minds between Kun and Fulop sufficient to invoke the protection of Business Corporation Law § 504. The Supreme Court credited Fulop's testimony that she had never agreed to share Bucked Tooth with Kun, and that Kun never mentioned to her that she wanted to be a 50% shareholder of Bucked Tooth. Slater also testified that Kun never told him that she wanted to be a 50% shareholder of Bucked Tooth. Additionally, the evidence showed that Kun never asked for or received any forms to report a shareholder's distributed share of income from Bucked Tooth, corporate tax forms, or any other indicia of shareholder status. Further, although Kun testified at trial that she became aware that she was not a shareholder of Bucked Tooth as early as 2004, she continued in the relationship without demanding any rights of a shareholder until October 2006, when she had her attorney write a letter to Fulop demanding documentary proof of shareholder status. Thereafter, when Slater informed her that she had no shareholder rights in Bucked Tooth, she waited until March 2007 to commence the instant action. Therefore, the Supreme Court properly rejected Kun's assertion that she was a 50% shareholder of Bucked Tooth (*see Hunt v Hunt*, 222 AD2d 759, 760-761 [1995]; *see also Matter of Heisler v Gingras*, 90 NY2d 682, 687 [1997]; *cf. Matter of Estate of Purnell v LH Radiologists*, 90 NY2d 524, 530 [1997]; *Matter of Capizola v Vantage Intl.*, 2 AD3d 843, 844-845 [2003]).

Kun's remaining contention is without merit. Skelos, J.P., Covello, Balkin and Sgroi, JJ., concur.