Matter of Coven v Neptune Equities, Inc (2021 NY Slip Op 05334)





Matter of Coven v Neptune Equities, Inc


2021 NY Slip Op 05334


Decided on October 6, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 6, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
LEONARD B. AUSTIN
COLLEEN D. DUFFY, JJ.


2018-14172
 (Index No. 601706/17)

[*1]In the Matter of Divanea Coven, etc., petitioner- respondent, 
v
Neptune Equities, Inc., et al., respondents-appellants, Staci Broder, as personal representative of the Estate of Stanley Coven, intervenor-respondent-appellant.


Haber & Haber, LLP, Garden City, NY (Stephen D. Haber of counsel), for respondents-appellants and intervenor-respondent-appellant.
Forchelli Deegan Terrana, LLP, Uniondale, NY (Jacqueline A. Rappel of counsel), for petitioner-respondent.



DECISION & ORDER
In a proceeding pursuant to Business Corporation Law § 1104-a for the judicial dissolution of a closely held corporation, Neptune Equities, Inc., Staci Broder, and Staci Broder, as personal representative of the Estate of Stanley Coven appeal from an interlocutory judgment of the Supreme Court, Nassau County (Timothy S. Driscoll, J.), entered October 24, 2018. The interlocutory judgment, upon a decision of the same court entered February 28, 2018, after a framed-issue hearing, adjudged that Walter Coven was the owner of 50% of the shares of Neptune Equities, Inc., at the time of his death and that the petitioner had standing to maintain this proceeding.
ORDERED that the interlocutory judgment is affirmed, with costs.
In 1993, Dorothy Coven (hereinafter Dorothy) owned 100% of the shares of Neptune Equities, Inc. (hereinafter Neptune). According to the second and fourth articles of Dorothy's last will and testament dated August 26, 1993 (hereinafter Dorothy's will), she devised "all tangible personal property" she owned at the time of her death and the residue and remainder of her property and estate to her husband, Stanley Coven (hereinafter Stanley), if he survived her. However, also in the event that Stanley survived her, pursuant to the third article of Dorothy's will, Dorothy devised "to the Trustees hereinafter named the maximum amount by which [her] federal taxable estate . . . may be increased without causing an increase in the federal estate tax payable by reason of [her] death" (hereinafter the credit shelter trust). The third article further provided that upon the death of Stanley, the principal of the credit shelter trust was to be distributed in accordance with the fifth article of Dorothy's will, which provided that, in the event that Stanley did not survive her, then the residue and remainder of her estate was to be distributed to her surviving descendants, per stirpes. Dorothy's will did not specifically mention her Neptune shares.
In October 1993, Dorothy died, and was survived by Stanley and their two children, Walter Coven (hereinafter Walter) and Staci Broder (hereinafter Staci). Thereafter, Stanley died on February 12, 2011. Stanley was survived by Staci and Walter. Under the terms of Stanley's last will [*2]and testament, his residuary estate was given to the Stanley Coven Revocable Trust (hereinafter Stanley's trust). Pursuant to Stanley's trust, upon his death, his residuary trust estate was to pass to his descendants, per stirpes, but Walter's share of Stanley's estate was to be held in further trust. Under Stanley's trust, upon Walter's death, any remaining balance in the trust for Walter was to be distributed per stirpes to Walter's descendants.
Subsequently, Walter died on May 30, 2016, and was survived by the petitioner, who was his second wife, and his two children from a previous marriage.
In February 2017, the petitioner commenced the instant proceeding, alleging, inter alia, that she was the personal representative of Walter's estate and that, at the time of his death, Walter owned 50% of the outstanding shares of Neptune. The petitioner sought, among other things, the judicial dissolution of Neptune pursuant to Business Corporation Law § 1104-a. In their answer, Neptune and Staci objected to the petition on the ground that the petitioner lacked standing to commence this proceeding. They contended that, at the time of his death, Stanley owned 100% of the shares of Neptune in his individual capacity, so that after his death, his shares passed 50% to Staci outright and 50% to Walter in trust, and upon Walter's death, the shares passed to Walter's descendants, his two children. In her separate answer, Staci, as personal representative of Stanley's estate, also asserted standing as an objection.
The Supreme Court held a framed-issue hearing to determine whether the petitioner, as representative of Walter's estate, was a shareholder of Neptune in order to have standing to commence this proceeding. At the hearing, Angela Siegel, an attorney with whom Walter and Staci had consulted regarding ownership of Neptune's shares, Alan Klaben, a certified public accountant who prepared tax returns for, inter alia, Stanley and Neptune, and Staci testified.
After the hearing and the submission of posthearing memoranda, in a decision entered February 28, 2018, the Supreme Court determined that Walter owned 50% of Neptune's shares at the time of his death and, thus the petitioner had standing to maintain this proceeding as the personal representative of Walter's estate. The court subsequently entered an interlocutory judgment upon the decision to that effect. Neptune, Staci, and Staci, in her capacity as the representative of Stanley's estate (hereinafter collectively the appellants) appeal.
Only the holders of shares representing 20% or more of the votes of all outstanding shares of a corporation may commence a proceeding for dissolution pursuant to Business Corporation Law § 1104-a (see id. § 1104-a[a]; Miglio v Schildbach, 303 AD2d 470, 471; Shea v Hambros PLC, 244 AD2d 39, 52-53). "The burden of establishing the requisite ownership interest in a corporation that is the subject of a dissolution proceeding rests with the petitioner" (Matter of Iceland Inc., 97 AD3d 579, 579). "In reviewing the Supreme Court's findings of fact, this Court's authority 'is as broad as that of the [hearing] court' and includes the power to 'render the judgment it finds warranted by the facts, taking into account in a close case the fact that the [hearing] judge had the advantage of seeing the witnesses'" (Matter of Pappas v Corfian Enters., Ltd., 76 AD3d 679; 679, quoting Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; see Matter of Capizola v Vantage Intl., 2 AD3d 843, 844).
Here, the petitioner established by a preponderance of the evidence that Walter owned 50% of Neptune's shares at the time of his death (see Matter of Pappas v Corfian Enters., Ltd., 76 AD3d at 680). Although neither the credit shelter trust nor Walter were listed as shareholders on Neptune's corporate ledger or issued stock certificates, "[t]he mere fact that a corporation did not issue any stock certificates does not preclude a finding that a particular individual has the rights of a shareholder" (Zwarycz v Marnia Constr., Inc., 130 AD3d 922, 923; see Kun v Fulop, 71 AD3d 832, 833; Blank v Blank, 256 AD2d 688, 693). "In the absence of any stock certificate, a court must examine other available evidence to determine the validity of a putative shareholder's claim" (Zwarycz v Marnia Constr., Inc., 130 AD3d at 923). "Such evidence may include 'corporate tax forms, or any other indicia of shareholder status'" (Matter of Thomas, 179 AD3d 98, 102-103, quoting Kun v Fulop, 71 AD3d at 834).
After Stanley's death, for every year between 2011 and 2016, Neptune's S Corporation tax returns provided a Schedule K-1 reporting Walter as a shareholder. Neptune cannot take a position in this proceeding contrary to the position taken on its tax returns (see Matter of Tehan [Tehan's Catalog Showrooms, Inc.], 144 AD3d 1530, 1532; Matter of Capizola v Vantage Intl., 2 AD3d at 845; see also Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422; Man Choi Chiu v Chiu, 125 AD3d 824, 825-826). Although the appellants contend that the decision to provide Schedule K-1s to Walter stemmed from Siegel's legal advice, which they maintain was erroneous, the appellants did not contest from the time of Stanley's death in 2011 until Walter's death in 2016, that Walter had inherited the shares in Neptune (see Kun v Fulop, 71 AD3d at 834; cf. Hunt v Hunt, 222 AD2d 759, 760). Further, Staci, as a corporate officer of Neptune, authorized the electronic filing of those tax returns.
Contrary to the appellants' contentions, an order dated May 14, 2010, of the Supreme Court, New York County, issued in an unrelated action entitled M & E Petroleum, Inc. v Coven, commenced in that court under Index No. 11488/01 (hereinafter the New York County action), which, inter alia, determined that Stanley owned the shares of Neptune in his individual capacity, is not controlling in this proceeding. In the New York County action, the enforcement of the May 14, 2010 order was stayed upon the granting of Stanley's motion to vacate and reconsider an order dated June 17, 2010, and the case ultimately settled before that motion was decided. Further, in the New York County action, Stanley asserted that he did not own the shares of Neptune in his individual capacity (see Hunt v Hunt, 222 AD2d at 761).
The appellants' remaining contentions either are without merit or need not be considered in light of our determination.
DILLON, J.P., CHAMBERS, AUSTIN and DUFFY, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court